We're going to move to our second case, which is an immigration case, which I am not even going to attempt to pronounce. I have no idea how to pronounce the petitioner's name, and I hope that counsel will enlighten us on how we say this name. Case number 21-584. May it please the court, my name is Chris Danislavsky with the Northwest Immigrant Rights Project. On behalf of petitioner, whose name is Sergei Zhovtonizhko, in response to the judge for his question, I would like to reserve three minutes of time for rebuttal, please. The sole issue before this court is whether the petitioner's convictions for attempt to involving moral turpitude, based on the relevant case law from this court and from the Washington state courts, they do not in the agency erred in concluding otherwise. The crux of this issue hinges on the unique definition of driving in a reckless manner in Washington, which the Washington Supreme Court in Roggenkamp recognized is a term of art unique to the state's motor vehicle laws. And in Roggenkamp, they went on to distinguish it from what would be considered general recklessness as defined by RCW 9A.08.01, parentheses, 1, parentheses, C. Again that court in Roggenkamp explicitly rejected the dissent suggestion that the term in driving in a reckless manner should incorporate that general recklessness standard. That general recklessness standard would require a conscious disregard of a substantial risk, but the courts in Washington have consistently held that driving in a reckless manner is a lesser mens rea than the wanton and willful disregard and other things that are more akin to general recklessness. The court in Hunley is also illustrative on this point, the Washington state court in that the defendant there argued that reckless driving, which is a separate statutory offense defined under RCW 9A, I'm sorry, 46.61.500, which does require that wanton and willful disregard standard. And it rejected that as a lesser included offense for attempt to allude because that explicitly that driving in a reckless manner does not require that heightened mens rea of the wanton and willful disregard for the safety of others. And so the agency in its decision hinged its decision on its previous decision in, presidential decision in Ruiz Lopez, that decision is not dispositive here because that dealt with a prior version of the Washington attempt to allude statute, which did require that heightened standard of mens rea of driving in a wanton and willful disregard for the safety. Is there any legislative history from the Washington legislature as to when they made the change in the language in the statute, what they were intending? I have not been able to find any legislative history on that point, but I do think it's noteworthy that the court adopted language that had been used since I believe 1938 and other context of driving in a reckless manner and explicitly chose to lower that standard. Again, I don't have, I wasn't able to find much in the way of legislative history, but I'm hard pressed to think of another reason the court would want to amend that mens rea standard if not to widen the scope of what would be prosecutable under that statute. I have a question. The Washington Court of Appeals has interpreted this reckless manner to be, I think, rash and heedless, indifferent to the consequences. I'm trying to figure out what indifference to the consequences refers to. Are we talking about, I guess, is there anything in Washington law that you're aware of that tells us indifferent to what consequences? Any consequences or are we talking about personal risk or property risk or do you have any sense of what that might mean more specifically? I think just based on the plain language it uses the word indifference instead of a language around the lines of a conscious disregard of a known risk. It's just not caring about something as opposed to knowing about a risk and saying, I'm going to consciously disregard that in my actions. And the use of the word consequences just by its plain language is also much broader than basically anything that could result from that conduct, not specifically harm. I do think that the ... I'm not aware of any Washington cases that further construe that language. In the State v. Smith case, I think there are some illustrative points that that court makes on the language of the statute. It found that in affirming the decision below that a jury could reasonably find that repeatedly ignoring the officer who was trying to pull over the vehicle could be considered heedless, which is defined as inattentive or oblivious, among other descriptors. And it also found that when the officer was standing next to the driver, the defendant, Smith in that case, and that driver made a U-turn and drove away, that that could be There was nothing in there that, in the language of Smith in that discussion, that mentioned that there was any sort of risky behavior with that. It just, it is such a low standard of, compared to the wanton and willful disregard standard that any sort of consequence could apply. It's not just a consequence that is specifically related to risk of harm. And, as a threshold matter, the court doesn't owe any deference to the agency decision below because it did misconstrue the essential elements of the statute with this, which this court reviews de novo. It essentially conflated the previous standard of wanton and willful disregard with the current standard of driving in a reckless manner to say they are the same. And it essentially treated this as if it were, it didn't do any meaningful analysis of, again, that unique term of art of driving in a reckless manner and seemed to superimpose the concept of general recklessness with a conscious disregard of risk, which is in the board's reasoning out page five of the administrative record, and the, or driving in a reckless manner, again, which incorporates that wanton and willful disregard. And I could be sympathetic to the fact that the word reckless is used in a variety of ways in Washington and it does create some confusion, but the court did not meaningfully engage with any of the state case law that did clarify that it is both a lower mens rea and what exactly it meant. And nothing in that definition requires a conscious disregard of any sort of risk. And so the agency below is not owed any Chevron deference under Oriana v. Barr because it was interpreting a different statute, even though it essentially was treating them as equivalent. And it is also not owed any deference under Skidmore because it erroneously applied the elements of the statute to the crime involving moral turpitude generic definition. Furthermore, the board decision below didn't meaningfully engage in this court's relevant case law. While there are only two cases that specifically deal with offenses involving fleeing from the police, specifically in, by this court, in Ramirez-Contreras and in Moran, those cases are sort of, were developed out of a previous set of case law that analyzed the sliding scale that was established in Cerrone for assault offenses and then was later applied to endangerment offenses, which this essentially is. And the courts found that where there is a higher mens rea, there can be less of an inherent risk of harm involved. And when there's a lower mens rea, there can be, there needs to be a higher inherent level of risk involved. So that's why in Moran, with the heightened mens rea of willfulness, it found that driving in the wrong direction on a highway, which is inherently dangerous, was sufficient to bring it within the ambit of a CIMT. And, but while this wasn't relating to fleeing from the police, this court in Leal recognized that recklessness, which in that case, in the Arizona Felony Endangerment Statute, was more akin to that general idea of recklessness with a conscious disregard of a risk, that coupled with the risk of imminent death was enough. This falls short of both the mens rea, and again, because it falls short of even recklessness. And I'm not aware of a decision by this court or any other court that found that anything below general recklessness would be considered a CIMT. But what's more, there's also no inherent risk of harm involved with behavior that is essentially written so broadly that it involves just indifference to the consequences and heedless driving. I recognize the analysis is the scope of the statute and whether or not it's CIMT, but the 2016 and 2018 convictions for your client, what were the nature of those convictions? What was he doing? The, you're talking about the underlying facts? Yeah. I mean, I just don't think that's what... I'm not suggesting it's how our analysis should run. Just as a matter of curiosity, what was he doing? It was a much more... There was more serious conduct in one of the incidents, both himself and the passenger were injured. But again, the relevant analysis here is not to look at the underlying... In fact, the court's not permitted to do that in its analysis for what constitutes a CIMT. I also do think that it is worth highlighting that this court in Nicanor Romero recognized that the reasonable probability analysis can be met by the plain language of the statute or the language of a statute as state courts are unambiguously interpreting it. And that's what I think is the case here. Again, the standard that they chose to employ for this offense had a men's rate that's even lower than general recklessness and conduct that just required at a minimum heedless driving and different to the consequences. And if there are no further questions at this time, I'd like to reserve the room and give my time for rebuttal. Okay. Good morning. May it please the court. Greg Mack for the Attorney General. The court should dismiss this petition for review. The most ordinary reading of the elements of this Washington felony attempt to allude statute places it within the scope of a crime involving moral turpitude. This isn't a case like Romero's Contreras where there's sort of an innocuous traffic provision. This case is not like Moran. Moran does not require an aggravating element for it to be a crime involving moral turpitude. Moran involved an abrogated version of a California vehicle statute. That's why the word aggravated is in the Moran decision. So it's not like Moran. It's not like Romero's Contreras. So what should you do? As we indicated in our brief, you should defer to the board under either Chevron or under Schedule I. Counsel, how do we do that when the board has clearly misstated Washington law? Now, it may well be that driving in a reckless manner that the board might determine that in an independent decision that that constitutes a CIMT. But that's not what it did. It said there really hasn't been any effect, any real change in Washington law. They used the word reckless in both statutes. We've previously found that the word reckless was indicative of wanton and willful behavior and that's it. And the Washington courts have said these two statutes are not the same, this is a lesser standard of view. BIA hasn't grappled with that. So why is the board entitled to any deference? And we'll put our cards on the table. Certainly, the board acknowledged this is a different statute and decided State versus Brown and Brown said use the terms interchangeably, wanton, willful, and reckless. Now we know, of course, and as we've admitted in our brief, that reckless means something different here than the prior statute. We've admitted it means heedless, indifference to the consequences. What does that mean? It means heedless, indifference to the consequences in the context of eluding the police, refusing to comply with the police officer's command, and being on the road. If the BIA had said that, we might be having an entirely different conversation. But the BIA didn't say any of that. It said they used the word reckless in both statutes. We used, we said reckless was sufficient. End of story. Without citing any of the cases, and the cases from the Washington courts are pretty striking. They've said this was a substantive change in the standard. We have lowered the standard for what driving in a reckless manner means. And the board didn't grapple with any of that. The fact that you're grappling with it now is impressive. Congratulations. But you're not the board. Correct. Not the board. But I would point you back to what the board did. It cited to the State v. Brown case, which used those terms interchangeably, and the board asked itself, should we depart from matter Ruiz-Lopez? And we believe the departure isn't significant enough for the board to have said, and it was reasonable to conclude, it didn't need to depart from matter Ruiz-Lopez. And you asked about Washington legislative history in this case. So I think State v. Brown is not real helpful because that's a 1985 statute. And they went on to cite their own board decision with looking at recklessness in the matter of Tata-Shaville case, and then it leapt to saying, look, this is involving recklessness. It's still seriously endangers people. It's enough for us not to depart from matter Ruiz-Lopez, and we believe the court should afford Chevron deference, if not Chevron deference, then Skidmore deference to that conclusion, that the departure in the Washington state statute wasn't significant enough for the board to have said, should we depart from matter Ruiz-Lopez? I'd feel a whole lot better if they had cited some of the current Washington cases acknowledging the difference in Washington. Understood, Your Honor. But I think that's why the board cited to State v. Brown, and then looked to its touchstone case in matter Ruiz-Lopez and said, the departure here isn't that great. We see no reason to depart from it. And this is, and I know we're tinkering with the categorical approach. Petitioner's reading drains it all, of all meaning in the Washington statute. We think the most ordinary understanding of these elements is that it places it squarely within the scope of a crime involving moral turpitude. Heedless indifference is not such a great departure from the prior standard to take it outside the scope of a crime involving moral turpitude. So I'm going to try again to answer Your Honor's question with respect to Washington legislative history. I don't have a specific site. I'll get it to you after I get back to Washington, D.C., but what Washington said they were trying to do was just update the language. That's all they said they were doing in the legislative history, and I'll get the site to the court after this argument. But clearly, the Washington courts thought it was a departure, and they clearly said that it's lower than their prior cases dealing with the prior statute. Do you want us to defer to the Washington legislative history or what the Washington court said it was? Well, I think you have to defer to what the Washington court said, because this is the categorical approach. But I was just trying to answer the court's question with respect to what the Washington legislative history looked like. So our view, again, is this is seriously endangering conduct. It's an inherent risk to people on the road with respect to somebody who first won't respond to a police officer's command to stop and then recklessly departs from the scene, endangering people on the road. There are inherent risks with people on the road like this. And let's be clear, and I've said this before, we're tinkering with the categorical approach. We're not supposed to look at the factual circumstances. We're also, on top of that, trying to figure out how to cabin whatever moral turpitude means. So on top of that, what should the court do? This isn't, as I've said, Ramirez-Contreras. This isn't Moran. Again, what the court should do is defer to the board on this decision under either Chevron or under Skidmore in saying this departure wasn't significant enough for us to depart from our reasoning in matter of Ruiz-Lopez. So therefore, we would ask the court to dismiss this petition for review. Usually, we dismiss a petition when we don't have jurisdiction. Is that the appropriate thing or we deny the petition? You dismiss it because you lack jurisdiction. First, you have judicial review to consider whether the offense is a crime involving moral turpitude. And if it's a crime involving moral turpitude, it falls within 8 U.S.C. 1252a2c. And therefore, you would dismiss the petition. If there's, if, for the reasons Judge Bybee mentioned, we conclude that this doesn't rise to the level of either Chevron or Skidmore deference. So no deference is accorded. Do you lose? No. We still think, we think deference is important because it's the board dealing with an ambiguous term. But still, even on a de novo basis without deference, the departure here in the Washington statute wasn't significant enough for the board to conclude that it should depart from its analysis in matter of Ruiz-Lopez. So either under. That construct that you've just used about it's not real significant, is that captured in any of the Washington State cases? No. I mean, clearly, the Washington State cases say it's a lower standard, that it's heedless to the consequences. But I think the board looked to State v. Brown to say they, Washington courts, have used the terms willful, wanton, and reckless interchangeably. If you look at the State v. Brown case itself, and it's not specifically stated in our brief, the State v. Brown case itself uses the term indifferent to the consequences. So again, we would ask the court to dismiss the petition for review, unless there's further questions. Thank you very much. I just want to bring up a couple of quick points. My opposing counsel and the board dismissed this court's decision, Ramirez-Contreras, because it found that it was distinguishable. And we're not arguing that it's not distinguishable. The Washington definition of driving in a reckless manner does not involve the same sort of definition that would have three traffic violations that would constitute the fulfillment of that requirement. But the board did not meaningfully engage with the entirety of Ramirez-Contreras' decision, which found that in these flight from police offenses, which the Ramirez court noted are always very serious offenses, that no one is arguing that they are not serious offenses, but that to bring it into the realm of a CIMT, it has to be conscious flight from the police in an especially dangerous manner. So to the extent that the government's brief is arguing that any risk at all would suffice, and again, my position is the standard for driving in a reckless manner of heedless driving, indifferent to the consequences, casts such a wide net that it does not inhere any risk. But what's more, it has to be especially dangerous, and not just any potential risk. There is a heightened requirement that this court has required in Ramirez-Contreras, and that it followed in Moran by applying that sliding scale faithfully. I also do think it's worth noting that the only Washington state case law that the board cited in its decision, aside from one case that just, it cited for the proposition for the change of law in 2003, but the only state case law that it cited in its analysis of whether this was a CIMT or not, was what my opposing counsel mentioned in State v. Brown, which as Judge Bybee pointed out, preceded the change in law, and was not actually analyzing, again, that unique term of art that is an outlier in Washington state of driving in a reckless manner. And so I think that just lays bare that the agency did not do its job here. And at a minimum, a remand would be warranted in this case. I think that the elements as laid out, and how it fits into this court's relevant case law, would warrant this court to find that this is categorically not a crime involving moral turpitude. But at a minimum, I think that this case should be remanded to the board. And if there are no further questions, I will conclude my arguments. Thank you, counsel, for the helpful arguments in this matter, which will now be submitted.
judges: BYBEE, FORREST, Seeborg